In re SAUSE BROTHERS OCEAN TOWING, a corporation, as Owner/Charterer of the T/V OCEAN SERVICE, Plaintiff,

**In a Cause for Exoneration from or Limitation of Liability,**

**And related cases.**

**Civ. No. 89–609–RE.**

United States District Court,
D. Oregon.

Nov. 26, 1991.

Guy C. Stephenson, Schwabe, Williamson & Wyatt, Portland, Or., for plaintiff Sause Bros. Ocean Towing and third-party defendant BP North America Petroleum, Inc.

Douglas M. Fryer, Jeffrey L. Jernegan, Mikkelborg, Broz, Wells & Fryer, Seattle, Wash., Sydney L. Chandler, Chandler, Lesan, Stokes & Finneran, Coos Bay, Or., for claimant/third-party plaintiff Canada.

Paul N. Wonacott, John M. Cowden, Kim Jefferies, Wood, Tatum, Mosser, Brooke &

Landis, Portland, Or., for claimant/third-party plaintiff British Columbia.

Kenneth O. Eikenberry, Atty. Gen., Ann C. Essko, William C. Frymire, Asst. Attys. Gen., Olympia, Wash., Michael E. Haglund, Michael K. Kelley, Haglund & Kirtley, Portland, Or., for claimant/third-party plaintiff State of Wash.

Stuart M. Gerson, Asst. Atty. Gen., Charles H. Turner, U.S. Atty., Jack G. Collins, First Asst. U.S. Atty., Chief, Civil Div., Portland, Or., Philip A. Berns, Attorney in Charge, West Coast Office, Warren A. Schneider, Asst. Atty. in Charge, Robert J. Cunningham, Trial Atty., Torts Branch, Civil Div., U.S. Dept. of Justice, San Francisco, Cal., for claimant U.S.A. and U.S.A. as Trustee for Hoh, et al.

David S. Teske, David S. Teske & Associates, Seattle, Wash., for claimants LeBlanc, et al.

Dean D. DeChaine, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., Hugh M.G. Braker, Port Alberni, B.C. V9Y 7M2, Canada, for claimants Nuu–Chah–Nulth Tribal Council, et al.

Robert P. Zuanich, Jones & Zuanich, Seattle, Wash., for claimants Dale Marble, Dominick Pepetti.

Gary F. Kollmuss, pro se claimant.

Christopher Harvey, Russell & DuMoulin, Vancouver, B.C. Canada V6E 3G2, for claimant Marilyn Dobrilla for Bill Dobrilla (deceased).

Leigh R. Hilbert, pro se claimant.

Ralph Tieleman, pro se claimant.

Janice R. Dillon, Vancouver, B.C. Canada V6Z 1S4, for claimants Wickaninnish Is. Properties Ltd.

Ken Zakreski, pro se claimant.

Jan Thomas Baisch, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, Or., for claimants John Does # 1–100.

Garry P. McMurry, Portland, Or., for claimants Pacific Rim Resort Properties, Inc., et al.

Kathleen M. Ker, La Liberte Hundert, Vancouver, B.C. Canada V6Z 1V8, for claimants Clayton Fuller and Stanley Full-

er, et al., and Claimants Pacific Pride Seafoods Corp.

Ucleulet Band Council, pro se claimant.

Mark D. Andrews, Barrister and Sol., Vancouver, B.C. Canada V6C 3H7, for claimants Susan Etherington, et al., and Mark Klotz, et al.

Kevin R. Lyon, Cullen & Cullen, Olympia, Wash., for claimants Quileute Tribal Council.

Sharon Janeson, Richard, B.C., Canada U7E 3A5, for claimants Richard Alan Holmes and Matthew Cardell, dba Al's Gooseneck Corp.

Brett A. Purtzer, Tacoma, Wash., for claimants Kurt Marble and Jon Schmidt.

David F., Margaret R., and Stephen J. Rae–Arthur, pro se claimant.

Arthur Clarke, pro se claimant.

Louis J. Zivot, Lang, Michener, Lawerence & Shaw, Vancouver, B.C. Canada V7X 1L1, for claimants T. Cameron Scott, Ron Dunsmore and Ian J.W. Garcia.

Jeffrey J. Bodé, Bellingham, Wash., for claimants Steve Lawson and Suzanne Hare.

## OPINION

REDDEN, Chief Judge:

Plaintiff Sause Brothers Ocean Towing Company (Sause Brothers) brings this limitation of liability action pursuant to the court's admiralty jurisdiction.[1] Claimant Canada seeks damages for environmental harm caused by oil spilled from a Sause Brothers vessel. Now before me are Canada's and Sause Brothers' cross motions for discovery. Canada moves for a protective order for return of certain documents, and Sause Brothers moves to compel production of additional documents. Canada also moves for a protective order prohibiting a deposition by Sause Brothers.

## BACKGROUND

In response to document requests submitted by Sause Brothers in 1990, Canada produced three letters written by one of its attorneys, H.J. Wruck of the Canadian Department of Justice. These letters were to scientists retained by Canada to study the environmental harm caused by the spill. They include various comments and inquiries by Wruck on draft damage assessment reports prepared by the scientists. The letters were first inspected by Sause Brothers in August, 1990, and copies were produced for it sometime between then and October, 1990. Canada claims that two of the letters, those dated October 12 and November 24, 1989, are privileged counsel communications.[2] Canada further claims that the letters were inadvertently disclosed to Sause Brothers; that it did not learn of the disclosure until counsel for Sause Brothers asked questions concerning the letters in a deposition on September 19 and 20, 1991; and that Canada's counsel promptly asserted privilege at that time. Sause Brothers argues that any privileges were waived by Canada's disclosure of the letters.

## DISCUSSION

### A. Canada's Motion for Protective Order Regarding Privileged Documents

Canada moves for an order requiring Sause Brothers to return the Wruck letters because they are protected by the attorney-client privilege and the work product doctrine.

The federal common law of privileges governs in federal question cases. Fed.R.Evid. 501; *Weil v. Investment/Indicators Research and Management, Inc.,* 647 F.2d 18, 24 (9th Cir.1981). The party asserting a privilege has the burden of establishing it, and doing so with respect to a given communication requires demonstrating that the privilege has not been waived. *United States v. Zolin,* 809 F.2d 1411, 1415 (9th Cir.1987) *aff'd in part and vacated in part,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *see also*

---

1. See 46 U.S.C.App. § 183, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2. At oral argument, Canada's counsel stated that it has now discovered that a total of 12 to 15 privileged documents were mistakenly disclosed. My rulings on these motions are intended to encompass all of these documents.

*Weil*, 647 F.2d at 25. The requirements of waiver ordinarily differ between the attorney-client privilege and the work product doctrine, but there is no distinction where, as here, the alleged waiver was by a disclosure to the privilege holder's opponent in litigation. *Transamerica Computer Co. v. International Business Machines Corp.*, 573 F.2d 646, 647 n. 1 (9th Cir.1978); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 328 (N.D.Cal.1985).

Canada's own briefs recognize that two fundamentally different views exist among federal courts regarding waiver of privilege through inadvertent disclosures of documents in discovery. Some courts reject the view that inadvertent disclosures can ever constitute waiver. Other courts, inclined to construe privileges more narrowly, find that inadvertent disclosures *can* effect waiver, and view the lack of a subjective intent to disclose as merely one factor to consider in a case-by-case waiver analysis. The former view rejecting inadvertent waiver is held by several courts outside the Ninth Circuit. *See e.g. Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951, 955 (N.D.Ill.1982), *Georgetown Manor, Inc. v. Ethan–Allen, Inc.*, 753 F.Supp. 936, 938 (S.D.Fla.1991) (citing *Mendenhall* analysis, and other cases in accord). The latter view, however, prevails in the decisions of the Ninth Circuit. *See e.g. United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir.1987); *Weil v. Investment/Indicators Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir.1981); *Transamerica Computer Co. v. International Business Machines*, 573 F.2d 646 (9th Cir.1978). Four recent district court cases on this point within the Ninth Circuit found that inadvertent document disclosures did effect waiver. *Eureka Financial Corp. v. Hartford Acci. & Indem. Co.*, 136 F.R.D. 179, 184 (E.D.Cal.1991); *Bud Antle, Inc. v. Grow–Tech, Inc.*, 131 F.R.D. 179, 183–184 (N.D.Cal.1990); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 126 F.R.D. 58, 61 (D.Or.1989); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 328–32 (N.D.Cal. 1985).

In support of its motion, Canada seeks to distinguish the Ninth Circuit Court of Appeals' unfavorable waiver decisions and analogize to the favorable cases, all the while expounding the reasoning of the courts which reject inadvertent waiver altogether. I find these efforts unpersuasive.

Canada first compares its inadvertent disclosure to one found not to have effected waiver in the Ninth Circuit's 1978 *Transamerica* decision. There, the court expressly avoided deciding whether inadvertent disclosure could constitute waiver. 573 F.2d at 650. Instead the court found that defendant IBM's inadvertent disclosure of documents in a prior case had not waived the attorney-client privilege because it had in effect been compelled. 573 F.2d at 651. The court in the prior case had ordered an extraordinarily rapid discovery schedule. IBM had been required to screen and produce 17 million pages of documents within a three month period. After reviewing IBM's efforts to comply with this schedule, the *Transamerica* court concluded that "it would be disingenuous ... to say that IBM was not, in a very practical way, 'compelled' to produce privileged documents...." *Id.*

Here, Canada claims to have produced in excess of 140,000 pages of documents in response to Sause Brothers' interrogatories and requests for production. This is far less than the 17 million involved in *Transamerica*, and there were no comparable time constraints imposed here. This case is not comparable to the "truly exceptional and [ ] unique" situation on which the *Transamerica* decision rested. *Id.*

Canada next distinguishes the facts of the Ninth Circuit's 1981 *Weil* decision, where waiver was found. The distinction is well taken. The critical disclosure in *Weil* was not through documents, but rather deposition testimony, and there was evidence there of a more genuinely voluntary waiver. It was in *Weil*, however, that the Ninth Circuit first clearly rejected the view that inadvertent disclosures cannot constitute waiver. 647 F.2d at 24; *see also Hartford*, 109 F.R.D. at 332 (*Weil* indicates that Ninth Circuit would not follow minority rule of *Mendenhall* ). *Weil* states that the subjective intent of the privilege holder is

merely one factor in determining whether waiver should be implied from disclosure. 647 F.2d at 24.

Canada also compares its disclosure to one found not to have effected waiver in *Zolin*. In a brief discussion that did not detail the surrounding circumstances, *Zolin* found that a secretary's delivery of certain tapes mistakenly thought to have been blank "was sufficiently involuntary and inadvertent to be inconsistent with a theory of waiver." 809 F.2d at 1417 (citing *Transamerica*). This finding is of limited precedential value here. It did not concern a production of documents in discovery. Moreover, the *Zolin* court, in a more expansive discussion appearing earlier in its opinion, found that waiver *had* been effected by another disclosure. 809 F.2d at 1415.

■ Several federal courts have recently adopted a standard approach to deciding whether inadvertent disclosures of documents effect waiver of privileges. These courts consider five factors: (1) the reasonableness of the precautions taken against disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *See e.g. Eureka Financial*, 136 F.R.D. at 184; *Bud Antle*, 131 F.R.D. at 183; *Hartford*, 109 F.R.D. at 332; *Lois Sportswear, USA, Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y.1985).

Consideration of these factors lead me to conclude that Canada has not established non-waiver of privilege. Discussion of the other elements of the privileges is therefore unnecessary.

■ First, Canada's efforts to avoid disclosure were only marginally reasonable. It employed a paralegal services firm to identify and segregate privileged documents and prepare a privileged documents list, and the October 12 and November 24 Wruck letters were on the list. The list was not submitted to Sause Brothers, however, until several months *after* the documents had been disclosed and copied. Failure to provide the list until after the disclosure rendered it less likely that Sause Brothers would realize the disclosed docu-

ments were privileged. *See Bud Antle*, 131 F.R.D. at 131. Further, Canada disclosed the letters *twice;* once for initial inspection, and again in producing copies sometime later. *See id.* (similar repeated failure to detect disclosure cited as factor indicating precautionary measures were not reasonable). There appears to have been no supplemental review of the documents of which Sause Brothers requested copies. *Compare Lois Sportswear*, 104 F.R.D. at 104 (no waiver where counsel's intervening review detected privileged documents among those of which copies were requested).

Second, Canada's efforts to rectify its error come over a year after the initial disclosure. By this time, Sause Brothers had been afforded ample opportunity to thoroughly analyze the two Wruck letters. *See Bud Antle*, 131 F.R.D. at 183 (discovery six weeks later was a critical error, despite fact disclosing party acted as soon as it discovered the error).

As to the third factor, discovery was broad, encompassing 140,000 pages of documents.

Fourth, as to the extent of disclosure, the long period of disclosure and Sause Brothers' efforts to further explore the letters' content demonstrate that it has been thorough.

Finally, as to the overall fairness of finding waiver here, Canada makes no compelling argument demonstrating that finding waiver would be unfair. At oral argument, Canada conceded that the disclosures did not present a critical problem. On balance, consideration of the factors supports a finding of waiver. I deny the motion Canada's motion for a protective order requiring return of the disclosed documents.

### B. *Sause Brothers' Motion to Compel*

■ Sause Brothers moves to compel production of all drafts of all reports relating to Canada's claims for environmental damage or cleanup costs allegedly incurred as a result of the spill, and all related correspondence.

Sause Brothers seeks the benefit of the "subject matter waiver" rule, under which disclosure of one communication effects waiver of privilege not only as to it, but also others concerning the same subject matter. This rule's applicability to waiver by inadvertent disclosure is, however, questionable. *See, e.g., In re Sealed Case,* 877 F.2d 976, 981 (D.C.Cir.1989) (applying subject matter waiver, but remanding for a more precise definition of the subject matter's scope) and *Parkway Gallery v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46, 52 (M.D.N.C.1987) ("In a proper case of inadvertent disclosure, the waiver should cover only the specific document in issue"). Neither party here cites Ninth Circuit authority addressing this question, and I have found none. Sause Brothers' reliance on *Weil* and on *McCormick–Morgan, Inc. v. Teledyne Industries, Inc.,* 765 F.Supp. 611 (N.D.Ca.1991) is inapposite, as neither involved inadvertent disclosures comparable to those here.

Sause Brothers claims the Wruck letters show that Canada's attorneys suggested changes to the draft environmental damage reports aimed at preventing disclosure of some facts and misrepresenting others. Sause Brothers argues that it needs copies of the draft reports to discover information that may have been edited out of the final reports. Sause Brothers further claims that given this alleged conduct, the attorney-client communications themselves should also be disclosed. At oral argument on these motions, Canada expressed willingness to disclose the draft reports. Canada resists, however, further disclosure of attorney-client communications.

I find the subject matter waiver rule does not apply here and therefore deny the motion as to attorney-client communications. The subject matter waiver rule is intended to deter manipulative partial disclosures by litigants seeking advantage thereby. Sause Brothers does not (and cannot) effectively argue that it has been prejudiced by disclosure of the Wruck letters. The letters were not disclosed to gain advantage. Expanding the scope of the waiver to other attorney-client communications is therefore inappropriate. *Parkway*

*Gallery,* 116 F.R.D. at 52 (citing cases in accord); *Bank of New England v. Marine Midland Realty Credit Corp.,* 138 F.R.D. 479 (D.Va.1991); *See also Developments in the Law, Privileged Communications,* 98 Harv.L.Rev. 1450, 1664 (1985) (implied waiver of undisclosed matter never appropriate by inadvertent disclosure).

Sause Brothers' contention that Canada's counsel has manipulated the discovery process with regard to the damage reports is nonetheless serious. The November 24 Wruck letter lends some, but only very little, support. Under the circumstances, Canada should disclose each of the early drafts of the environmental damage reports. I therefore grant the motion as to those reports.

## C. *Canada's Motion for a Protective Order Prohibiting Sause Brothers' Deposition of Wruck*

Canada moves for a protective order prohibiting Sause Brothers' planned deposition of its attorney Wruck. Sause Brothers plans to depose Wruck on "the limited issue of his involvement in the drafting or changing of the scientific reports supporting Canada's claim for environmental damage." Sause Brothers' Memorandum in Support of Motion to Compel at 4, n. 1.

Courts look with disfavor on attempts to depose opposing counsel. *Harriston v. Chicago Tribune Co.,* 134 F.R.D. 232, 233 (N.D.Ill.1990) (citing *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986) and other cases). Depositions of opposing counsel are disruptive of the adversarial process and harmful to the standards of the legal profession, *Id.,* and entail a high risk of implicating opinion work product. *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.,* 117 F.R.D. 83, 85–86 (M.D.N.C.1987). The *Harriston* court found that counsel depositions should be limited to situations where: (1) no other means exists to obtain the information sought; (2) the information is both relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. 134 F.R.D. at 233. In this context, some

courts place the burden of showing that a deposition will not invade the attorney-client privilege or the attorney's work product on the party seeking the deposition. *E.g. N.F.A.*, 117 F.R.D. at 86.

Here, Sause Brothers has not shown that deposing Canada's counsel is the only means to discover the information it seeks, nor that the proposed deposition would not, as appears certain, invade areas protected by privilege. Disclosure by Canada of the early draft environmental damage reports should inform Sause Brothers of the relevant facts. Absent a greater showing, a deposition of opposing counsel is inappropriate. I grant Canada's motion for a protective order prohibiting the deposition.

CONCLUSION

I deny claimant Canada's motion for a protective order concerning privileged documents. I grant plaintiff Sause Brothers' motion to compel with respect to all draft environmental damage reports, but deny the motion insofar as it seeks production of privileged attorney-client correspondence or work product. I grant Canada's motion for a protective order prohibiting Sause Brothers from deposing its counsel.