Nicholas F. **KAISER** and Markel
F. Kaiser, Plaintiffs,

v.

The **MUTUAL LIFE INSURANCE COMPANY OF NEW YORK; Monyco, Inc.; Unified Holdings, Inc.; and David C. Peck, Defendants.**

**MONYCO, INC.** and the Mutual Life Insurance Company of New York, Counter-plaintiffs,

v.

Nicholas F. **KAISER** and Markell
F. Kaiser, Counter-defendants.

**No. IP 91–791–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 23, 1994.

Jerry Garau, Price & Barker, Indianapolis, IN, for Nicholas F. and Markell F. Kaiser.

Bruce H. Weitzman, McDermott, Will & Emery, Chicago, IL, Hugh E. Reynolds Jr., Locke Reynolds Boyd & Weisell, Indianapolis, IN, for Mutual Life Ins. Co., Monyco, Inc., Unified Holdings, Inc., David C. Peck.

## ENTRY AND ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF BRUCE H. WEITZMAN.

FOSTER, United States Magistrate Judge.

This matter comes before the Court on the plaintiffs' motion to compel the deposition of Bruce H. Weitzman, one of the attorneys for the defendants in this action (filed May 19, 1994, docket no. 159). The plaintiffs allege that Mr. Weitzman was either an actor in or a witness to three events which are relevant to their claims. First, according to the plaintiffs, Mr. Weitzman was the representative of the defendants who informed the plaintiffs on June 28, 1989 that the defendants would not honor an oral agreement to pay the plaintiffs' earnouts which was allegedly reached earlier that same day. The plaintiffs have sued for breach of that oral contract. Secondly, the plaintiffs allege that Mr. Weitzman threatened that more than $7 million of the defendants' notes held by the plaintiffs would not be paid unless the plaintiffs signed the resignation agreement offered by the defendants. The plaintiffs claim that this threat contributed to the involuntariness of their resignations which violated their employment contract. The defendants deny that such a threat was made. Thirdly, the plaintiffs allege that Mr. Weitzman was present at a June 27, 1989 meeting in New York during which Mr. Gaines informed the plaintiffs that, in addition to the terms of the preliminary resignation agreement reached on June 22, 1989, the defendants also wanted Mr. Kaiser's resignation from the mutual funds advised by Unified Management Company. According to the plaintiffs, Mr. Weitzman's testimony about this crucial meeting is important because Mr. Gaines' and their own accounts differ markedly. Because Mr. Weitzman's conduct itself forms the basis for some of their claims or he was a material witness regarding other claims, the plaintiffs argue that he possesses material information which they are entitled to discover.

The federal rules permit the deposition of "any person", Fed.R.Civ.P. 30(a), 31(a), and do not specifically address depositions of a party's counsel, see *Walker v. United Parcel Services*, 87 F.R.D. 360, 361 (E.D.Penn.1980) ("it is clear that no special privilege or immunity shields a person from deposition simply because he or she is an attorney, or even an attorney for a party to the suit"); 8 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2102 at 369–70 (1970). Two related provisions of Rule 26, however, authorize a court to limit the broad discovery allowed

under the federal rules. First, paragraph (b)(2) provides in part:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c).[1]

Second, subdivision (c), on protective orders, provides in part:

> Upon motion by a party or by the person from whom discovery is sought ... and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

The burden is on the Rule 26(c) movant to establish adequate grounds ("good cause") for an order protecting against discovery. 8 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2035 at 264–65 (1970). Protective orders prospectively suppressing depositions are rarely granted; deponents are expected instead to assert their objections during the deposition and to allow questioning parties to develop circumstantial facts in order to explore the propriety of the assertion of the privilege, immunity, or other objection. 8 *Fed'l Prac. & Proc.* § 2037 at 272. Deponents must answer after registering their objections except "when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3)." Fed.R.Civ.P. 30(d)(1). Rule 30(d)(3) permits the deponent or any party to suspend a deposition for the time necessary to move for a protective order which is grantable upon a showing that "the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party." A showing of "exceptional circumstances" has been required for a court to prohibit completely the taking of a deposition. *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 84 (M.D.N.C.1987). Clearly, under the ordinary discovery standards of the federal rules, the plaintiffs are entitled to depose Mr. Weitzman without preapproval of the Court and the burden is on the defendants to establish their objections. The defendants argue, however, that a different standard applies to depositions of an opposing party's attorney, a standard which requires the plaintiffs to obtain preapproval to depose Mr. Weitzman and shifts the burden to them to establish the absence of objections. They assert that the plaintiffs have failed to satisfy this standard. In order to depose their attorney, Mr. Weitzman, the defendants contend that the plaintiffs have the burden of showing that (1) the information sought is relevant and not privileged, (2) there are no other means to obtain the information, and (3) the information is crucial to the preparation of the plaintiff's case. *See Shelton v. American Motors*

---

1. Although Rule 26(b)(2)'s list of grounds for limiting discovery "reflect[s] the existing practice of many courts in issuing protective orders under Rule 26(c)", Fed.R.Civ.P. 26, Advisory Committee Note to the 1983 amendment, 28 U.S.C.A. Fed.R.Civ.Proc. Rules 26 to 37, at p. 35 (1992), the paragraph is intended specifically to combat the problems of "redundant or disproportionate discovery", *id.* (also referred to as "over-discovery" and "discovery overuse"). To that end, clauses (b)(2)(i) and (ii) are designed to "reduce repetitiveness", "minimize redundancy in discovery and encourage attorneys to be sensitive to the comparative costs of different methods of securing information", and clause (b)(2)(iii) "address[es] the problem of discovery that is disproportionate to the individual lawsuit as measured by such matters as its nature and complexity, the importance of the issues at stake in a case seeking damages, the limitations on a financially weak litigant to withstand extensive opposition to a discovery program or to respond to discovery requests, and the significance of the substantive issues, as measured in philosophic, social, or institutional terms." *Id.* Strictly interpreted, therefore, paragraph (b)(2) is inapplicable to the peculiar problems presented by depositions of parties' attorneys.

*Corp.*, 805 F.2d 1323 (8th Cir.1986). Although the defendants cited district court decisions applying this standard or a variation of it,[2] no controlling authority from the Supreme Court or the Seventh Circuit Court of Appeals was cited, and we discovered none.

■ Among the dangers or concerns cited by courts with counsel depositions is the disruption to the effective operation of the adversarial system entailed in the disclosure of attorney work product and privileged attorney-client communications. *See, e.g., Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986) (citing *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Some courts fear that depositions of opposing counsel present a "unique opportunity for harassment". *Marco Island Partners v. Oak Development Corp.*, 117 F.R.D. 418, 420 (N.D.Ill.1987). A third concern is that the time involved in preparing for and undergoing such depositions will disrupt counsels' preparation of parties' cases and thus decrease the overall quality of representation. *See Shelton*, 805 F.2d at 1327. Courts have also pointed to the potential of counsel depositions to spawn litigation over collateral issues (*e.g.*, privilege, immunity, and harassment claims), thus imposing additional delays and burdens on both parties and the courts. *Id.* A fifth concern is that such depositions may lead to the disqualification of counsel who may be called as wit-

nesses. *Marco Island,* 117 F.R.D. at 420. Finally, some courts have feared that permitting depositions of party's counsel would have a chilling effect on the truthfulness of attorney-client communications. *Shelton,* 805 F.2d at 1327. (See generally the cases cited in note 2). None of these concerns, however, alone or in combination, justify a court deviating from the framework provided in the rules for raising and resolving such concerns. As noted above, the rules place the burden on the discovery resister to raise and sustain any objections to discovery based on privilege, work product immunity, harassment, and undue burden. Rule 26(b) and (c). The Rules do not grant a special privilege or immunity from discovery to parties' counsel. *See Walker v. United Parcel Services*, 87 F.R.D. 360, 361 (E.D.Penn.1980). However, when the particular circumstances of a discovery dispute indicate that a significantly more practical or efficient means of resolution is available, courts may exercise discretion to regulate the course of discovery under the Rules in order to "secure the just, speedy, and inexpensive determination" of an action. Rule 1; *Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). If a court believes that depositions of counsel are becoming more common, that such depositions are more likely than not being used by opponents merely to harass or disrupt counsel's preparation, or that counsel depositions will more likely than not be occupied

2. Although their formulations of the standard vary, the decisions have in common the shifting of the burden to the deposition requester to show the absence of legitimate objections to the discovery. *Eschenberg v. Navistar International Transportation Corp.*, 142 F.R.D. 296 (E.D.Mich.1992); *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305–06 and n. 3 (N.D.Ill.1992) (in addition to the *Shelton* factors, court required requesters to show that "the need for the information outweighs the inherent risks of deposing opposition counsel" and that "all other reasonable alternatives have been pursued to no avail"); *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D.Fla.1990) (requesters must show "the propriety and need for the deposition", "that the deposition is the only practical means available of obtaining the information", and that the information will not invade work product immunity or attorney-client privilege); *Hay & Forage Industries v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D.Kan.1990) (requires a showing of need, propriety, and exhaustion of

alternatives, but requires deponent to raise privilege and immunity objections at the deposition); *Perry v. Jeep Eagle Corp.*, 126 F.R.D. 542, 544 (S.D.Ind.1989) ("information sought must be relevant and nonprivileged"); *Advance Systems, Inc. of Green Bay v. APV Baker PMC, Inc.*, 124 F.R.D. 200 (E.D.Wis.1989) (*Shelton* standard); *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D.N.C.1987) (requesters must "establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome"); *Marco Island Partners v. Oak Development Corp.*, 117 F.R.D. 418 (N.D.Ill.1987). It has been noted by at least one court that imposing a stricter standard appears to be the trend in the law. *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 593 (N.D.N.Y.1989). Not having surveyed the current state of the case law on this issue or having reference to such a survey, we are unable to confirm the accuracy of this observation.

with seeking protected work product or privileged information, then a court may be warranted in requiring the requesting party to prospectively overcome the courts' concerns. Such a procedure would be a practical means for the court and the parties to avoid becoming mired in collateral litigation the resolution of which is almost foregone.

■ Unlike the cases on which the defendants rely, we do not believe that depositions of counsel are so rarely justified or so great a phenomenon as to warrant imposing a stricter standard for their allowance. Unlike the *Shelton* court, we have not observed that the practice of deposing opposing counsel has become more popular, 805 F.2d at 1327; in fact, our experience is that such depositions are not common[3] and have not occupied an inordinate amount of our or parties' time. We have no basis for adopting a general presumption that relevant information which a party seeks from his opponent's counsel during a deposition is overwhelmingly likely to be privileged or immune from discovery and the defendants did not make a convincing showing that this presumption should be applied on the particular facts of this case.[4] Likewise, we find no basis in our experience or the argument of the defendants for presuming that the potential for harassment is greater with counsel depositions than with depositions of parties or witnesses. In addition, we are unconvinced that counsel depositions present a greater potential for disruptions or delays than is presented by depositions of parties or ordinary witnesses. Therefore, at this time, we prefer to follow the ordinary standards and procedures provided in the rules for resolving the defendants' attorney-client, work product, undue burden, and harassment objections to Mr. Weitzman's deposition. Mr. Weitzman (or the defendants) must raise specific objections to specific questions at the deposition and it

will be Mr. Weitzman's (or the defendants') burden to establish the propriety of those objections if presented to the Court.

■ Out of a sense of caution, however, in light of the admitted weight of cases finding that the unique character of counsel depositions requires special attention by the courts, we require the plaintiffs to make a preliminary showing of relevance. They have done so. The plaintiffs have sufficiently alleged Mr. Weitzman's involvement as an actor in and/or witness of three of the events forming a basis for their claims. Those allegations sufficiently demonstrate that he possesses relevant and material information. Even cases in the *Shelton* line recognize that, if an attorney is a witness of or actor in prelitigation conduct, he may be deposed the same as any other witness. *See, e.g., Bogan v. Northwestern Mutual Life Insurance Co.*, 152 F.R.D. 9, 14 (S.D.N.Y.1993); *West Peninsular*, 132 F.R.D. at 303 n. 3; *Johnston Development Group, Inc. v. Carpenters Local 1578*, 130 F.R.D. 348, 352 (D.N.J.1990); *N.F.A.*, 117 F.R.D. at 85 n. 2.

Two *caveats*. First, the plaintiffs argued that any work product immunity and/or attorney-client privileges applicable to Mr. Weitzman's testimony are waived in light of the plaintiffs' claims of bad faith and the defendants' assertion of the affirmative defense of unclean hands. Our decision here is limited to allowing the deposition of Mr. Weitzman; it is not a ruling on those issues. Second, the question of whether Mr. Weitzman may be deposed is distinct from the question of whether he should be disqualified because of his role as a witness. *See Bogan*, 152 F.R.D. at 14. The latter issue was not presented and is not addressed by this order.

### Order.

The plaintiffs' motion to compel the deposition of Bruce H. Weitzman is **GRANTED.**

---

**3.** At least one court shares our experience. *Walker*, 87 F.R.D. at 361 ("Certainly, the deposition of an attorney for a party to the litigation is not common.").

**4.** The defendants argued that two of the three subjects on which the plaintiffs desire to question Mr. Weitzman "appear to contemplate incursions into privileged matters." (Defendants Response at 7). They claim that Mr. Weitzman's knowledge of the circumstances surrounding his

informing the plaintiffs that the defendants would not pay their earnouts "unquestionably includes privileged communications", (*id.*), and that "it is difficult to conceive of any non-privileged information" Mr. Weitzman has regarding his alleged threat that the defendants would withhold payment on the seven million dollars of notes. These conclusory assertions are insufficient.

The scope of the deposition is limited to the three subject areas identified by the plaintiffs in their motion and here listed: (1) facts relating to Mr. Weitzman's informing the plaintiffs on June 28, 1989 that the defendants would not honor the alleged oral resignation agreement reached the same day; (2) facts relating to Mr. Weitzman's alleged threat to the plaintiffs that the defendants would not pay over seven million dollars of the defendants' notes held by the plaintiffs; and (3) facts relating to the June 27, 1989 meeting in New York attended by Mr. Weitzman.

The parties should inform the Court if they desire the deposition to be scheduled at the Court House in order to facilitate the resolution of objections.

The defendants' motion for leave to file a sur-response is **DENIED.**

SO ORDERED.